UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT BELKNAP, III,

    Plaintiff,

v.                                        Case No. 05-73323

J.B. HUNT TRANSPORT, INC.,
and EARL A. DEDRICK, jointly and      HONORABLE AVERN COHN
severally,

    Defendants.

_____/

## MEMORANDUM AND ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO LIMIT DISCOVERY AND TRIAL ON REMAND

### I. Introduction

This is a tort case arising out of an automobile accident. Plaintiff Scott Belknap is suing defendants J.B. Hunt Transport, Inc. (J.B. Hunt) and Earl A. Dedrick (collectively, defendants) for negligence resulting from a car/truck collision in which Dedrick rear-ended Belknap. As will be explained, the case is on remand from the Court of Appeals for the Sixth Circuit.

Before the Court is defendants' motion styled Motion to Limit Discovery and Trial on Remand to Plaintiff's Injuries Related to His Alleged Traumatic Brain Injury Claim. The motion pertains to the proper scope of the remand. For the reasons that follow, the motion is DENIED WITHOUT PREJUDICE. As stated at the hearing, the issue is best resolved after consideration of the jury instructions and verdict form at the final pre-trial conference. Should defendants be dissatisfied after the final pre-trial conference, they may raise the issue by filing a motion in limine.

## II. Background

### A.

On September 1, 2004, Belknap was traveling southbound on I-75 in Detroit. Dedrick, driving a truck owned by J.B. Hunt, rear-ended Belknap when Belknap slowed for traffic. Belknap was able to get out of his vehicle and did not immediately need medical assistance. However, Belknap says he felt dazed and confused and requested that police officers take him home to rest. Later that evening, Belknap began experiencing lower back and shoulder pain and was treated at Oakwood Hospital Emergency Room ("Oakwood"). The reports from Oakwood show that Belknap reported feeling dazed. Belknap was diagnosed with lumbar and left shoulder strains.

### B.

Belknap sued defendants claiming orthopedic injuries related to his shoulder, lower back and right hand and a "traumatic brain injury." Complaint at ¶ 21.

Defendants moved for summary judgment claiming that none of Belknap's injuries constituted a "serious impairment of body function" necessary for recovery under Michigan's No-Fault statute, M.C.L. § 500.3135(7) and Kreiner v. Fischer, 471 Mich. 109 (2004). In response, Belknap argued in part that his traumatic brain injury was a "serious neurological injury" and therefore satisfied the closed head injury automatic jury question exception of M.C.L. § 500.3135(2)(a)(ii). Belknap supported this argument with the affidavit of Dr. Samet, his treating orthopedic physician, who opined that "Belknap may have sustained an serious neurological injury."

The Court heard argument on defendants' motion. At the hearing, the Court was concerned with the conclusory nature of Dr. Samet's affidavit and therefore ordered his deposition. The parties then filed supplemental papers. On February 2, 2007, the Court granted defendants' motion for summary judgment, finding (1) Belknap's injuries did not rise to the level of serious impairment of a body function, (2) Belknap did not

suffer from a serious neurological injury.

C.

Belknap appealed. His brief presented the following issues:

I. The district court erred in granting summary judgment where Mr. Belknap presented sufficient evidence of a closed head injury to make out a jury question under Mich. Comp. Laws § 500.3135(2)(a)(ii)

II. The district court erred in granting summary judgment where there was sufficient evidence to create a jury question on the issue of whether Mr. Belknap sustained a "serious impairment of body function" as a result of the September 1, 2004 accident.

The Sixth Circuit reversed. As to the first issue, the Sixth Circuit found that Dr. Samet's deposition testimony created a triable issue on whether Belknap suffered a serious neurological injury, concluding

> Viewing [Dr. Samet's deposition testimony] in the light most favorable to Plaintiff reveals that Dr. Samet did offer testimony that Plaintiff "may be" suffering from a "serious neurological injury." Mich. Comp. Laws § 500.3135(2)(a)(ii). Dr. Samet also offered an explanation that Plaintiff's neurological injury may be severe. See Churchman, 611 N.W.2d at 337. Under Mich. Comp. Laws § 500.3135(2)(a)(ii), this sworn testimony automatically created a question of fact for the jury. Accordingly, we hold that the district court erred in awarding summary judgment to Defendants.

Belknap v. J.B. Hunt, 2008 WL 897703 at *6 (6th Cir. Apr. 1, 2008) (unpublished).

The Sixth Circuit, however, did not address Belknap's second issue of whether he sustained a serious impairment of body function as to his orthopedic injuries.[1]

III. Analysis

A. Parties' Arguments

J.B. Hunt summarizes its position as follows:

> The Sixth Circuit's ruling that Dr. Samet's "serious neurological injury"

---

[1]Belknap devoted less than 2 full pages to this argument. The majority of the 36 page brief was devoted to the issue of Belknap's closed head injury.

> testimony satisfied the automatically created jury question for closed-head injuries under M.C.L. § 500.3135(2)(a)(ii) means only that Plaintiff is entitled to a jury trial on whether his alleged "traumatic brain injury" constitutes a "serious impairment of body function" under M.C.L. § 500.3135(7) and the principles of <u>Kreiner</u> . . . . Plaintiff is not entitled to a jury trial on whether his alleged orthopedic injuries constitute a "serious impairment of body function," however, because this Court's ruling on this issue was not disturbed by the Sixth Circuit and, therefore, remains the law of the case.

J.H. Hunt's brief at p. 1.

Belknap concedes that the Sixth Circuit did not address the question of whether his orthopedic injuries constitute a serious impairment of a body function and that the Court's holding is the law of the case. However, he argues that he is not precluded from presenting evidence of and recovering damages from those injuries. He argues that

> [a]pplying this basis principle of statutory interpretation to this case, this Court is compelled to conclude that, once Mr. Belknap establishes that he was entitled to recover noneconomic damages based on his closed head injury, he is entitled under the clear mandates of § 3135(1) to a full recovery of all noneconomic damages associated with injuries which, in and of themselves, do not meet the serious impairment threshold.

In other words, J.B. Hunt argues that the serious impairment of body function is a continuing limitation on damages in that every claimed injury must independently meet the threshold. Belknap, on the other hand, argues that the serious impairment of body function is simply a threshold hurdle, not a floor.

## B. The Statute

The issue is whether Belknap is precluded from offering evidence of and recovering damages from his orthopedic injuries which do not meet the threshold because he has meet the threshold of showing a jury question on whether he suffered a serious neurological injury. Resolution requires an examination of M.C.L. § 500.3135 which provides:

> (1) A person remains subject to tort liability for **noneconomic loss** caused by his or her ownership, maintenance, or use of a motor vehicle **only if the injured person has suffered** death, **serious impairment of body function**, or permanent serious disfigurement.

4

> (2) For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:
>
> (a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (I) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination as to whether the person has suffered a serious impairment of body function or permanent serious disfigurement. **However, for a closed-head injury, a question of fact for the jury is created if a licensed allopathic or osteopathic physician who regularly diagnoses or treats closed-head injuries testifies under oath that there may be a serious neurological injury**.

(Emphasis added).

## C. Conclusion

Belknap says that because the statute says he is entitled to recover for noneconomic losses in the event that the jury finds his serious neurological injury is a serious impairment of a body function, his noneconomic losses include recovery for <u>all</u> noneconomic losses, even if they stem from injuries which do not meet the serious impairment of a body function. In other words, Belknap says that once he gets over the serious impairment of a body function threshold for recovery, he can recover for all of his noneconomic injuries regardless of whether they meet the threshold.

J.B. Hunt's argument at first blush appears persuasive. The statute does not say one can recover for "all" noneconomic losses, but rather that recovery for noneconomic loss may be had where there is a serious impairment of body function. J.B. Hunt says that to accept Belknap's interpretation would turn the statute on its head because it would allow recovery for injuries which do not rise to the level of a serious impairment of body function by simply being able to establish that one injury rises to the level. According to J.B. Hunt, this would open the floodgate by allowing a back door for recovery for all injuries so long as one injury meets the serious impairment of body

5

function threshold. Given that the legislature clearly intended to limit recovery in tort actions in no-fault cases, a restrictive reading of the statute has intrinsic appeal.

However, in <u>Byer v. Smith</u>, 419 Mich. 541 (1984) the Michigan Supreme Court held that a person who is seriously impaired in body function may recover damages for pain and suffering and other sequelae of the injury after the impairment is no longer serious or severe. Although the court did not hold that injuries which do not reach the level of serious impairment of body function are recoverable, the import of the decision is that once a serious impairment of body function is established, damages flow from that, including for injuries which are resolved. In <u>Byer</u> the defendants urged the same interpretation of the statute J.B. Hunt advances, i.e. that the serious impairment of body function is a "continuing limitation" on recovery. The plaintiff in <u>Byer</u> contended it was only a threshold. The Michigan Supreme Court agreed with plaintiff, stating "'[s]erious impairment of body function' function as a limitation if construed as simply a threshold and as not intended to serve a larger purpose." <u>Byer</u>, 419 Mich. at 648.

J.B. Hunt cuts too fine when it says that <u>Byer</u>

> stands only for the proposition that if a plaintiff establishes that a certain injury satisfies the [serious impairment of body function] threshold, a plaintiff can seek recovery for the period after that injury has resolved. <u>Byer</u> does not stand for the notion, or even suggest, that a plaintiff may recover damages for all injuries, including alleged injuries that do not – and never did – meet the . . . threshold.

Indeed, in permitting recovery for injuries which are resolved - which clearly do not meet the threshold, the Michigan Supreme Court allowed for recovery on injuries which do not meet the threshold.

Indeed, the Michigan Court of Appeals considered such an argument in <u>Amos v. Keller Transfer Line, Inc.</u>, 2005 WL 954986 (Mich. Ct. App. Apr. 25, 2005) (unpublished). In <u>Amos</u>, the defendant appealed from a jury verdict in plaintiff's favor for injuries sustained in a car accident. The case, like Belknap's, focused on whether the plaintiff sustained a serious neurological injury sufficient to be a serious impairment

6

of body function.  At trial, plaintiff introduced evidence of resolved musculoskeletal (orthopedic) injuries and sought to collect damages from those injuries.  Defendant argued this was improper.  The court of appeals rejected this argument, citing Byer, and explaining:

> RTI's contention that the court improperly permitted evidence of Amos' resolved musculoskeletal injuries to be presented to the jury is without basis.  **Counsel for Amos made it abundantly clear that she did not assert that injuries to her back, neck and knee, which were admittedly resolved, constituted a serious impairment of body function meeting the required threshold criteria.  Amos consistently claimed that evidence of these injuries was submitted to the jury because noneconomic damages were compensable once the claimed threshold injury of a closed-head injury was established**. Byer v. Smith, 419 Mich. 541, 544; 357 NW2d 644 (1984).  Because evidence of these injuries was properly presented to the jury for its evaluation of noneconomic damages, the trial court did not err in failing to preclude reference to medical testing that originally established the existence of the physical condition.  Further, although RTI contends that reference to such medical testing improperly influenced the jury's determination, it offers no proof that such evidence was improperly considered or given exaggerated importance by the jury in its determination of damages.

Amos, 2005 WL 954986 at *3 (emphasis added).

Here the Court has ruled that Belknap's orthopedic injuries, whether resolved or not, do not rise the level of serious impairment of body function.  The Sixth Circuit's silence on the issue essentially means that this holding is the law of the case.  Although he cannot now argue that his orthopedic injuries meet the threshold, he can introduce evidence of them as an element of his noneconomic damages.

J.B. Hunt's attempt to distinguish Amos is unavailing.  J.B. Hunt says that the case does not control because, unlike here, there was no pretrial ruling that the plaintiffs orthopedic injuries did not satisfy the serious impairment of body function threshold.  Based on the court of appeals characterization of the record, however, it does not appear that the plaintiff ever put forth such an argument and conceded that her injuries did not meet the threshold.  She was, however, still allowed to recover for those injuries as part of her noneconomic damages.  So too should Belknap.

Finally, J.B. Hunt cites cases in which Michigan courts have dismissed

7

orthopaedic injuries as not meeting the threshold but remanded for trial a claim that there was a serious neurological injury. While these cases mirror somewhat that which occurred in this case, they do not address the issue of whether recovery for those injuries which the court of appeals determined did not meet the threshold will be available should the plaintiff prevail at trial on their serious neurological injury claim.

SO ORDERED.

    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: September 18, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 18, 2008, by electronic and/or ordinary mail.

    s/Julie Owens
Case Manager, (313) 234-5160